So Ordered.

Signed this 3 day of October, 2025.



_____
Patrick G. Radel
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

JOSEPH A. GRASSO,

                              Debtor.

Chapter 11
Case No. 25-10548 (PGR)

APPEARANCES:

BOYLE LEGAL, LLC                               MICHAEL LEO BOYLE, ESQ.
*Counsel for Debtor*
64 2nd Street
Troy, New York 12180

ZDARSKY, SAWICKI & AGOSTINELLI LLP     MARK J. SCHLANT, ESQ.
*Counsel for LG55 Doe*
1600 Main Place Tower
350 Main Street
Buffalo, New York 14202

## MEMORANDUM-DECISION AND ORDER DISMISSING CASE

      Bankruptcies are frequently filed to frustrate debt collection. However, their ultimate aim must be reorganization or orderly liquidation. The debtor here, having been found liable for sexually assaulting a minor while a Catholic priest and school

1

principal, seeks neither to rehabilitate his finances nor liquidate his assets — he wants the benefit of a stay pending appeal without the burden of a bond. This is not a proper use of bankruptcy and this case is dismissed.

## Jurisdiction

This Court has core jurisdiction over the parties and the subject matter of this contested matter under 28 U.S.C. §§ 1334(b) and 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

In March of 2024, a jury returned a verdict of $5.4 million in favor of LG 55 Doe and against Joseph A. Grasso ("Debtor"), finding that Debtor sexually assaulted LG 55 Doe when LG 55 Doe was a middle school student. (Docket No. 53-1, at ¶ 3).

On February 14, 2025, a judgment in the amount of $6,153,796.20 was entered against Debtor and in favor of LG 55 Doe (the "Judgment"). (Claim 1-2, Part 3).

Debtor appealed to the New York State Appellate Division, Fourth Department, on February 19, 2025, but did not post a bond to stay enforcement of the Judgment pending appeal pursuant to N.Y. C.P.L.R. § 5519(a)(2). (Docket No. 53-1, at ¶ 4).

On April 2, 2025, LG 55 Doe's counsel served a subpoena to take Debtor's deposition and discover assets available for collecting the Judgment. (Docket No. 53-1, at ¶ 6).

On May 13, 2025, Debtor, by and through counsel, commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2

(Docket No. 1). The filing automatically stayed Debtor's appeal and LG 55 Doe's collections efforts pursuant to 11 U.S.C. § 362(a).

On June 23, 2025, Debtor filed a motion for limited relief from the stay to allow him to pursue his State Court appeal. (Docket No. 25). LG 55 Doe opposed the motion, arguing, *inter alia*, that this case should be dismissed as it was filed in bad faith. (Docket No. 33).

On August 15, 2025, LG 55 Doe moved for conversion of this case to Chapter 7 pursuant to 11 U.S.C. § 1112(b). (Docket No. 53). Debtor filed a reply opposing the motion on September 2, 2025. (Docket No. 59). This Court heard oral argument on September 9, 2025, in Utica, New York, with Debtor and LG 55 Doe appearing through their above-referenced counsel and being heard.

During oral argument, this Court asked LG 55 Doe's counsel whether LG 55 Doe believed dismissal was an appropriate outcome, as opposed to conversion to Chapter 7; counsel requested time to consult with his client, which was granted. In addition, this Court asked Debtor's counsel whether he wished to make any additional argument(s) against dismissal other than the arguments advanced in his written reply and at the hearing in opposition to the conversion motion. Debtor's counsel did not offer any additional/alternative arguments in opposition to dismissal.

On September 18, 2025, LG 55 Doe's counsel filed a letter advising that his client supported dismissal of this case. (Docket No. 66).

This Court held a further hearing on September 23, 2025, with appearances as indicated above, heard additional argument, and dismissed the case.

3

This Court's reasons for dismissing the case are set forth below.

## Analysis

"Bankruptcy is an equitable remedy whereby a debtor is clothed with the protection of an automatic stay, preventing his creditors from acting against him for a period of time, in order to facilitate rehabilitation or reorganization of his finances and to promote a 'fresh start' ...." *9261 Shore Rd. Owners Corp. v. Seminold Realty Co.* (*In re 9281 Shore Rd. Owners Corp.*), 187 B.R. 837, 848 (E.D.N.Y. 1995) (internal quotation marks and citation omitted).

Section 1112(b)(1) of the Bankruptcy Code gives the court the power to dismiss a Chapter 11 case, or convert it to Chapter 7, "whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1).

The Code provides examples of "cause," including "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," and "gross mismanagement of the estate." *Id.*

These examples are "illustrative, not exhaustive," *C-TC 9th Ave. P'ship v. Norton Co.* (*In re C–TC 9th Ave. P'ship*), 113 F.3d 1304, 1311 (2d Cir.1997), and, if cause is established, the court has "wide discretion" in determining whether dismissal or conversion is the right remedy. *In re Dark Horse Tavern*, 189 B.R. 576, 580 (Bankr. N.D.N.Y. 1995).

The primary (and perhaps only) goal of this bankruptcy filing is to stay LG 55 Doe's collection efforts while Debtor pursues his appeal in State Court. Is this a permissible purpose or cause for dismissal? This Court considers that question below.

4

### *C-TC Factors*

"[A] finding that a case was filed in bad faith supports a dismissal for cause under section 1112(b)." *In re JPA No. 111 Co.,* No. 21-12075 (DSJ), 2022 WL 298428, at *10 (Bankr. S.D.N.Y. Feb. 1, 2022).

The Second Circuit has explained that "[w]hen it is clear that, from the date of the filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing, then the Chapter 11 petition may be frivolous." *C-TC*, 113 F.3d at 1310.

Moreover, "an entity may not file a petition for reorganization which is solely designed to attack a judgment collaterally—the debtor must have some intention of reorganizing." *Id.* (quoting *Baker v. Latham Sparrowbush Assocs.* (*In re Cohoes Indus. Terminal, Inc.*), 931 F.2d 222, 227 (2d Cir. 1991)).

Courts in this Circuit analyze whether a case was filed in bad faith using the following factors identified in *In re C-TC 9th Ave. P'ship*:

> (1) the debtor has only one asset;
>
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
>
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
>
> (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

5

>   (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
>
>   (6) the debtor has little or no cash flow;
>
>   (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and
>
>   (8) the debtor has no employees.

*Id.* at 1311.

"A court should not apply the *C-TC* factors mechanically or in isolation, and may choose to consider any one or all in its effort of analyzing the totality of the circumstances." *In re Neilson*, No. 17-10631, 2018 WL 6982228, at *3 (Bankr. N.D.N.Y. Aug. 31, 2018), *aff'd sub nom. Neilson v. Est. of Benedict*, No. 1:18-CV-1101, 2020 WL 1140493 (N.D.N.Y. Mar. 9, 2020).

In the present case, other than a luxury vehicle purchased shortly before filing, the Debtor's only significant assets are retirement accounts with a combined value of $1,003,650.28, representing nearly 81% of his total assets. (Docket No. 65, at p. 3-8). This factor weighs in favor of finding cause to dismiss or convert. *See In re Syndicom Corp.*, 268 B.R. 26, 50 (Bankr. S.D.N.Y. 2001) ("Other than some flotsam and jetsam furniture and fixtures in the Apartment, the Debtor's only asset is its interest, to the extent it has one, in the Apartment, and the bundle of alleged contractual and litigation rights emerging from the Apartment option.").

As to the second factor, Debtor has no secured creditors and few unsecured creditors, who appear to be primarily personal acquaintances, and whose claims are

6

modest and dwarfed by LG 55 Doe's Judgment, which comprises nearly 99% of the total liabilities. (Docket No. 1 at p. 8-12).[1]

The lack of a "significant creditor body … to be protected by the Debtor's filing" weighs in favor of finding cause to dismiss or convert. *In re Ancona*, No. 14-10532 (MKV), 2016 WL 7868696, at *4 (Bankr. S.D.N.Y. Nov. 30, 2016); *see also Syndicom*, 268 B.R. at 51 ("Other than Mr. Takaya (who welcomes, and seeks, relief from the stay or dismissal), the Debtor has only two or three creditors who are not either insiders or the Debtor's lawyers. They represent less than 8% of the Debtor's stated total claims. There certainly is not a significant creditor body to protect.").

As to the third *C-TC* factor, although this case does not involve foreclosure, this factor focuses on whether the bankruptcy filing is a litigation tactic to gain advantage in a state court proceeding. *See, e.g.*, *Sapphire Dev., LLC v. McKay*, 549 B.R. 556, 572 (D. Conn. 2016) ("The reason Factor Three focuses on pending foreclosure is that such a scenario suggests that the filer's only intent in seeking bankruptcy protection was to stall the foreclosure. Evidence of virtually the same intent is supplied by a different, yet similar, circumstance in this case: as noted, the timing of Sapphire's bankruptcy filing strongly suggests that Sapphire was using the bankruptcy laws as a litigation tactic to stall the State Court Action, which threatened, in effect, to divest it of its sole asset.").

---

[1] The parties disagree as to whether Debtor's acquaintances expect repayment or whether these debts are gifts. In any event, it appears undisputed that most of the other creditors have a personal relationship with the Debtor and many of their loans were not memorialized in writing. (Docket No. 53-1, at ¶ 12; No. 59, at ¶¶ 25-26, n.2).

New York law generally requires an appellant seeking a stay to post a bond to protect the appellee during the pendency of the appeal. *See* N.Y. C.P.L.R. § 5519. The intent of Debtor's filing was to obtain a stay of LG 55 Doe's collection efforts pending appeal without posting the supersedes bond required under applicable non-bankruptcy law. This factor weighs in favor of finding cause for dismissal or conversion.

The fourth and fifth factors also weigh in favor of finding cause.

This is fundamentally a two-party dispute that can be — and can only be — resolved in State Court, as Debtor acknowledged by seeking stay relief to perfect and pursue the appeal. Debtor filed this case just as LG 55 Doe was beginning efforts to collect on the Judgment, in order to frustrate and delay those efforts by obtaining a stay pending appeal without providing LG 55 Doe the protection of a bond.

The eighth factor also points toward a cause finding.

This factor relates to a debtor's ability to reorganize and/or proceed to an orderly liquidation. *See, e.g.*, *In re Encore Prop. Mgmt. of W.N.Y., LLC*, 585 B.R. 22, 30 (Bankr. W.D.N.Y. 2018) (dismissing case for bad faith where debtor had "no cash flow and no employees" and debtor's "only 'business' [was] to litigate with [the judgment creditor]"); *In re Artisanal 2015, LLC*, No. 17-12319 (JLG), 2017 WL 5125545, at *11 (Bankr. S.D.N.Y. Nov. 3, 2017) (dismissing case where debtor had no cash flow, was not a "going concern," and bankruptcy's "only purpose a hope to relitigate a state court action").

8

While it is well-settled that "filing for chapter 11 relief to stay state court litigation is not *per se* bad faith," the filing's eventual end must either be reorganization or orderly liquidation. *Neilson*, 2018 WL 6982228, at *3-4 ("[W]here a debtor has minimal income, a court may find that such a case was filed as a litigation tactic and not in an effort to reorganize.").

Moreover, although there is no blanket rule mandating dismissal of a bankruptcy filed to avoid an appellate bond, courts consistently recognize the need for the case to serve some broader benefit. *See Syndicom*, 268 B.R. at 53-55 ("There is no question that many courts have considered a debtor's need and ability to reorganize, and a good faith purpose in seeking reorganization, as relevant to good faith in filing, a view with which this Court concurs."); *see also In re Wally Findlay Galleries, Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984) ("The debtor filed its petition herein to avoid the consequences of adverse state court decisions while it continues litigating. This court should not, and will not, act as a substitute for a supersedeas bond of state court proceedings.").

Some courts have cited federalism concerns to caution against an overly permissive posture with respect to filings designed to circumvent state supersedeas bond requirements. *See In re Smith,* 58 B.R. 448, 451 (Bankr. W.D. Ky. 1986) ("State law requirements of supersedeas bonds are not to be lightly ignored. The right to appeal is not an absolute one, having neither common law nor federal constitutional basis, but is a creation of statute, and its exercise should be strictly in accordance with the controlling state law. Due regard for principles of federalism requires no less

9

than our unrelenting respect for the controlling state law on supersedeas bonds …."); *Southmark Corp. v. Riddle* (*In re Southmark Corp.*), 138 B.R. 820, 828 (Bankr. N.D. Tex. 1992) ("Interference with the state statutory system regulating appeals and the protection of judgment creditors should not be taken lightly.").

In any event, no matter how broad or narrow the overall view, courts uniformly insist on a connection to the primary purposes of bankruptcy relief — rehabilitation/reorganization or orderly liquidation. *Compare In re Boynton*, 184 B.R. 580, 583 (Bankr. S.D. Cal. 1995) ("Generally, two types of cases have allowed a Chapter 11 filing in lieu of a supersedeas bond. These are: 1) where there is a multinational company faced with mass tort litigation; or 2) where a large debt would force the debtor to close its business and liquidate."), *and Margitan v. Hanna* (*In re Hanna*), No. BAP EW-17-1238-BJF, 2018 WL 1770960, at *6 (B.A.P. 9th Cir. Apr. 13, 2018) ("The bankruptcy court properly considered the viability of the Hannas' Plan as weighing heavily against dismissal."), *with In re Fox*, 232 B.R. 229, 235 (Bankr. D. Kan. 1999) ("The evidence suggests that the Debtor did not file this bankruptcy solely to avoid posting a supersedeas bond, but was also motivated by a desire to reorganize or liquidate in an orderly fashion."), *In re John V. Gally Fam. Protective Tr. Inc.*, No. 2:22-BK-05770-DPC, 2022 WL 18715956, at *6 (Bankr. D. Ariz. Dec. 21, 2022) (denying motion to dismiss where debtor could not post appellate bond, but was liquidating real estate "in an orderly fashion" and "evinced an intent to speedily and efficiently confirm a feasible plan by filing a plan of reorganization within 90 days"), *and In re Morris*, No. 3:16-BK-3070-PMG, 2017 WL 3503651, at *4 (Bankr. M.D. Fla.

Document     Page 11 of 14

July 19, 2017) ("In summary, it does not appear that this is a two-party dispute in which the Debtor filed the case solely to avoid paying the marital debt owed to Stephens.… Instead, the Debtor in this case faced substantial third-party debt, including several liens on his home and a … debt to the Internal Revenue Service, and has dealt with the claims through the provisions of Chapter 13.").

Here, Debtor's counsel's protestations notwithstanding, neither reorganization nor liquidation is reasonably in prospect — dismissal is the ultimate end of this case irrespective of the outcome of the appeal.

Debtor is retired, his income is passive (retirement funds and pension payments), he does not face financial pressure from creditors other than LG 55 Doe, and most of his assets are exempt.

If Debtor's appeal fails, he cannot satisfy LG 55 Doe's claim or propose a confirmable plan of reorganization.[2]

If the appeal succeeds, Debtor can meet his other obligations and bankruptcy will no longer be necessary. *See In re Purpura*, 170 B.R. 202, 207 (Bankr. E.D.N.Y. 1994) ("Purpura's financial posture negates any legitimate reorganization purpose. According to his bankruptcy schedules, he is solvent and, apart from Maida, reports insubstantial debt in relation to his assets held by a handful of creditors. Purpura

---

[2] LG 55 Doe filed an adversary proceeding asking this Court to determine his debt non-dischargeable pursuant to 11 U.S.C. § 523(a)(6) as a willful and malicious injury. (AP Docket No. 25-90013). Given the nature of the underlying claim, Debtor may not be able to discharge the debt if the appeal fails. *See generally Basile v. Spagnola* (*In re Spagnola*), 473 B.R. 518, 524 (Bankr. S.D.N.Y. 2012) ("The Court is persuaded by the many bankruptcy courts that have found that sexual harassment discrimination is inherently an intentional tort and allowed it to be excepted from discharge as a willful and malicious injury.") (collecting cases); *Pettey v. Belanger ex rel. Belanger*, 232 B.R. 543, 547 (D. Mass. 1999); *Thompson v. Kelly* (*In re Kelly*), 238 B.R. 156, 160 (Bankr. E.D. Mo. 1999); *Gray v. Gray* (*In re Gray*), 322 B.R. 682, 696 (Bankr. N.D. Ala. 2005).

presented no evidence that those creditors were pressing for payment when he filed. He does not need Chapter 11 protection to conduct his business affairs and pay his creditors."); *In re Banks*, 241 B.R. 434, 437 (Bankr. E.D. Ark. 1999) ("The purpose of the Bankruptcy Code is to provide debt relief to debtors who require a 'fresh start.' It is not a forum to avoid the import of state court decisions or other lawful obligations.").

"[B]ankruptcy rehabilitation provisions are intended to benefit only those in genuine financial distress and are not to be used strategically as an avoidance mechanism to get out of particular obligations viewed by a debtor as having undesirable consequences." *Purpura*, 170 B.R. at 207.

Application of the *C-TC* factors results in a finding of cause to dismiss or convert this case.

## Conversion or Dismissal

"Once a party establishes cause, a court must examine whether dismissal or conversion [to] a case under chapter 7 is in the best interests of the creditors and the estate." *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).

The court has "wide discretion" in determining the right remedy, *Dark Horse Tavern*, 189 B.R. at 580, and can dismiss even if the moving party sought only conversion. *BH S & B Holdings*, 439 B.R. at 350 ("Although the UST is seeking conversion of the cases to chapter 7, the Court has the option of instead dismissing

12

the cases for cause *sua sponte*.") (citing *In re State St. Assocs., L.P.*, 348 B.R. 627, 641-42 (Bankr. N.D.N.Y. 2006)).[3]

Here, there are no significant assets for a Chapter 7 trustee to reach for the benefit of creditors, as the bulk of Debtor's property consists of retirement funds protected by exemptions. (Docket No. 65, at p. 6-8). Conversion would not expedite or otherwise facilitate resolution of the key issue, *i.e.*, Debtor's appeal, which needs to proceed in State Court in any event. Further, LG 55 Doe has commenced an adversary proceeding to determine the dischargeability of the underlying debt (AP Case No. 25-90013-1), which means a converted case could not be administered or closed until the appeal is resolved.

Dismissal is the appropriate remedy. *See In re Tornheim*, 181 B.R. 161, 168 (Bankr. S.D.N.Y. 1995) ("The debtors do not have any property that a chapter 7 trustee could administer for the benefit of creditors. Conversion, therefore, does not serve the interest of the creditors and the estate."); *In re KG Winddown, LLC*, 628 B.R. 739, 746 (Bankr. S.D.N.Y. 2021) ("The other alternatives under section 1112(b)(1)—conversion to chapter 7 or appointment of a trustee or examiner—would impose costs that would only further erode the value of the already administratively insolvent estates with no apparent benefit, and are therefore not 'in the best interests of creditors and the estate[s].'") (quoting 11 U.S.C. § 1112(b)(1)); *In re Butt*, 598 B.R. 724, 729 (Bankr. W.D.N.Y. 2019) ("This case is a two-party dispute between Mr. Butt

---

[3] As set forth in the background section above, LG 55 Doe's counsel supplemented the conversion motion with a statement in support of dismissal. (Docket No. 66). In addition, this Court ensured Debtor's counsel had advance notice of the possibility of dismissal and ample opportunity to advance additional and/or alternative arguments in opposition to that outcome.

13

and Access Point. Mr. Butt's efforts here appear to be nothing more than a litigation tactic to prevent Access Point from exercising its rights as a secured creditor under the loan guarantee agreements. Access Point should be allowed to pursue its rights under New York State law. Accordingly, the Court finds that dismissal of this case serves the best interest of creditors.").

For the foregoing reasons, this case is DISMISSED for cause pursuant to 11 U.S.C. § 1112(b).

###